This is our second case of the day, Lane Walton v. The Illinois State Police, for the appellant, Assistant Attorney General, or? Okay, Sultan Zahra. Was I close? That's right. Alright. And for the appellate, Attorney John Taylor. Counsel, you may proceed. Thank you. Good morning. Good morning. May it please the court, counsel. I'm Stephen Sultan Zahra from the Illinois Attorney General's office on behalf of the Illinois State Police. In 2013, the General Assembly amended the Floyd Act to say in plain terms that the circuit court no longer has authority to order the state police to issue a Floyd card to someone who has been, who is barred by federal law from possessing firearms. Here, because of petitioner's battery conviction, which resulted from an altercation with his then wife, he is barred by federal law from possessing a firearm. For that reason, the state police revoked his Floyd card under Section 8N. And for that same reason, the circuit court erred when it reversed that revocation and ordered the state police to reissue him a Floyd card. The operative provisions of the Floyd Act here are plain and unambiguous. Section 8N allows the state police to revoke a Floyd card of anyone who is barred by federal law from possessing a firearm. And generally, someone who has their Floyd card revoked has two avenues of relief. There's Section 10B and there's Section 10C. The tests are a little bit different. But in 2013, the General Assembly amended both those sections and said that those avenues for relief are foreclosed if the reason for the revocation was that the petitioner was barred by federal law from possessing a firearm. And that's the case we have here. There's no dispute that petitioner, or let me back up a second. Under federal law, if you have a prior conviction for a misdemeanor crime of domestic violence, then you are barred from possessing firearms under that federal law. Is there any provision for a person under federal law to get that ban removed? Yes, there are a few different ways. One is through the state system or whatever jurisdiction under which that conviction arose. So if it's a state conviction like we have here, you can have that conviction removed in some way, for example, expunged by way of pardon. Can you use expungement on domestic battery convictions in Illinois? I don't know that that's available for a domestic battery conviction. But certainly the pardon is available. So that would be the only thing you could apply for a pardon? I think under my reading of the federal statute is under this, in a case like the one we have here, the only avenue for removing that federal prohibition would be through a pardon. I thought there was restoration of civil rights as another alternative. Yes, Your Honor. I believe that doesn't apply here because Petitioner never went to jail or prison, so he never had those civil rights removed. But you're right, Your Honor, I apologize. There certainly is. How about the restoration of the civil right to keep and bear arms? Your Honor, courts have held that restoration. I don't believe we briefed this in this case. But there is some authority that the civil rights to be restored are the right to vote, the right to hold office, and there is a third one, Your Honor. The right to serve on a jury. It is the right to serve on a jury, Your Honor. I apologize. I don't believe there's any authority, at least that I'm aware of, that says the restoration of the gun right itself is sufficient for that. Well, that's not actually argued here anyway, is it? That's right, Your Honor. It has not been briefed and it has not been raised in this case. But that is, to answer your question, Justice Polk, that that's another avenue for relief, typically, generally under the statute. It's not available here, I believe, because the rights at issue were not revoked in the first place. I don't think there's a dispute here that the conviction in this case qualifies as a misdemeanor crime of domestic violence. Petitioner, in his brief, concedes that it qualifies under the definition of a misdemeanor crime of domestic violence under the federal statute. He did plead guilty to battery, not domestic battery, but the United States Supreme Court has said that the domestic relationship doesn't have to be an element of the offense. That was United States behavior. So what we have here is plain, unambiguous terms in the statute that says if you are barred by federal law from possessing a firearm, the circuit court doesn't have authority to reverse a revocation. And we have a petitioner who is, in fact, barred by federal law from possessing a firearm. Are you aware of any movement in Illinois to provide another avenue other than a pardon? Let me give you an example. And you could make it a law enforcement officer, but let's just make it somebody who's a hunter. And he gets into an altercation with a teenage son, strikes him, charged and convicted of domestic battery. The public policy behind the prohibition of firearms in the hands of domestic violence offenders really doesn't apply to that situation. I mean, that's not why the legislation was promoted. So what remedy is there? I know that's not present in this case. Whatever the law is, the law is. Of course. But what do states do? To answer the first question, I'm not sure. I'm not aware of a movement for some legislation in Illinois that would remedy that situation. I know there exists. The federal system has, Congress has provided a mechanism by which someone in that situation could apply to the U.S. Attorney General for relief. But Congress has not funded that system. So one answer may be that on a federal level, congressional funding of the system that would allow someone in the situation you described to apply to the federal government for some relief. Now the federal government, I believe, and our state Supreme Court's reading of the federal system in quorum, is that the feds have said the states should have some way to give relief to individuals who have federal prohibitors. So I think there is room for state legislation to create some avenue of relief. Well, it seems to me it almost needs to be federal legislation that would approve a state process to do it. Like we have in Illinois. Judge Bowes heard evidence in this case. And after hearing that evidence, he decided this person wasn't a risk. He hadn't been convicted for over 20 years of any other offense. In fact, he'd been issued a FOIA card by the Illinois State Police, probably mistakenly, but it had his FOIA card benefits. Then he wanted to apply for concealed carry, I think, and that kind of brought it to their attention. So it seems to me it almost has to be federal legislation that would approve a state process oversight. Because I don't think the feds want to be involved in deciding under state law who should be allowed to carry a gun or not. They would defer to the states. But I don't think that legislation exists right now. I think that's probably correct. Well, let me ask you, would it be accurate to say that Justice Carmeier, joined by two of his colleagues in quorum, suggests that that is implied? Yes. That the states, if they make the findings in accordance with the statute, the Voight-Card Act, in effect can lift the disability at the federal level. That seems to me to be what they were saying. Of course, none of the other four judges agreed with that approach. I think that's right. I mean, of course, it wasn't operative in quorum itself, but Judge Carmeier did write. Nevertheless, they took the opportunity to address the amended statute, which wasn't even before them. That's right. My reading of that section is that those three justices believe that even under this system, there is some avenue of relief. But as Your Honor points out, the two concurring and two dissenting justices appear to feel otherwise. Of course, I wouldn't presume to say that we know what those four justices would do if this case went up to them. But I think that's a fair reading of what Justice Carmeier's position is, which is that right now, Illinois has a system like that in place. Whether further federal oversight would be necessary, I can't say. I just don't think we have a case that tells us right now. Just briefly, Your Honors, in the face of the plain language of the Act, Petitioner makes two primary arguments. The first is that the guilty plea here was insufficient. A guilty plea is insufficiently reliable to result in the loss of a right, like his gun rights. That claim fails for a couple of reasons. The first is that the federal statute contemplates that guilty pleas are sufficient. It says expressly that a conviction by guilty plea still can qualify as a misdemeanor crime of domestic violence. And the Supreme Court in Dickerson v. New Banner said so as well. It's a little different context. There was a federally licensed firearm dealer who had had their license revoked based on a prior conviction. But the dealer in that case made the same argument, that a guilty plea is not sufficiently reliable. And the Supreme Court said, no, that's not true. These guilty pleas are a cornerstone of our criminal justice system. They qualify, they have the same full force and effect as a conviction by a jury trial. And then regarding quorum, Petitioner raises quorum. I think we've discussed quorum. Just to reiterate, quorum didn't deal with the 2013 amendments. And we have four justices who disagree with Justice Carmeier's view of the current statute, that a petitioner could still get relief. So for that reason, quorum doesn't apply to this case and doesn't offer a petitioner any relief from the plain language of the Act. Your Honors, the General Assembly spoke in those 2013 amendments. The language is plain. We cannot ignore the plain language. And for this reason, the Circuit Court's decision to reverse the revocation of Petitioner's void card was erroneous. Before you sit down, would you agree that the special concurrences in quorum suggest that there could be a constitutional challenge in a factual situation like we have here? In fact, I think that's what was stated almost specifically. But we really don't have a constitutional challenge before us today. I think that's right, Your Honor. I mean, I believe the original, I can't recall if it was the Circuit Court. But at some point in the life of quorum, someone found there was a constitutional violation. That was the Circuit Court. Yes. Thank you, Your Honor. But the special concurrence, at least from my reading of it, suggests that the factual situation we have before us today could be challenged constitutionally as applied to this person, this defendant here. However, I guess Petitioner here, we don't have that circumstance in front of us now, right? We're not being asked to find it unconstitutional in this case. Yes, Your Honor. I believe that's correct. It hasn't been raised and briefed. I think there is an allusion to the Second Amendment in the Apley's brief, to be fair. But other than one allusion in a sentence, I don't believe the argument has been raised and fleshed out and has not been briefed. So, yes, Your Honor, I agree. It's not before the court right now. If the court has no further questions. Thank you, Counsel. Thank you very much. Mr. Taylor? Thank you, Your Honors. If it pleases the court. I'll try and be brief. In the trial court in this case, the trial court basically focused on rehabilitation under the Coram decision and made its decision pretty much based on that. I mean, the record speaks for itself. And I believe that under the Coram decision, they were right to do so. There's no argument relating to Mr. Walden's character or fitness and so forth. We focus on the legitimacy of Mr. Walden's guilty plea to a misdemeanor. I think the record speaks for itself. It basically was just given an opportunity to not come back to court. All you had to do was sign up. There was no fine, penalty, jail sentence or anything, which leads to the point that there was no civil rights or no rights of any kind taken away from him. He could be restored. As is contemplated under the federal statutes. The Floyd Card Act itself, or the Floyd Act, is unusual. No other state has anything like this. Or it. And at the time, Mr. Walden had this altercation that I think the record's clear. There was no penalty. Years later, in 2013, it's now codified in statutes at 725 ILCS 5-112A-11.1. There's actually a whole mechanism whereby misdemeanor battery charges or misdemeanor domestic battery charges or battery charges that could lead to federal gun rights restrictions have to be specifically noticed up. The courts in Illinois can have a hearing on this and give you an opportunity, I suppose, as a defendant to dispute whether or not your misdemeanor battery convictions would rise to the level of a federal firearms ban in so many words. Obviously, there was no such thing. As in Coram and Mr. Walden's case, there was no ban. That was four years later in the Lautenberg Amendment to the Federal Firearms Act. And I believe the Coram decision basically provides all the historical background there is on this issue. But what it amounts to is Mr. Walden has nowhere to turn. He has no opportunity for relief. I think pardons are not viable, as would be a court hearing. The legislature, at least in some sense, has provided for a means to hear out this issue. Unfortunately, there's no real good way to do this as law stands, unless Congress does something. The other problem you have is long ago misdemeanors are tied in some loose or close way to domestic battery. And you have a problem with felonies. People are young, end up pleading to a felony not knowing any better. And years later, the state police are digging around in a courthouse basement somewhere to come up with this pleading that nobody realized. You've got law enforcement officers who could lose their careers, that sort of thing. Of course, that's beyond this. But the point is there's no real organized way to seek redress for your problem. I think the issues are clear. Number one, Mr. Walden's guilty plea was expedient. We've cited some case law that these kinds of things happen where somebody goes and pays a traffic ticket. Years later, somebody tries to make it a court. As I put my brief, somebody tries to make it a cornerstone of their argument for personal injury or fault in some sort of a traffic accident. Well, court supervision was available at that time, wasn't it? Are you sure? I believe so, but I don't know. It was 1991. But Mr. Walden was not placed on court supervision. No, I think the record's clear. I think there was testimony and all of the surviving documents. He just basically comes to court. There was also an issue with a violation of an order of protection, which he thought he had taken care of. He'd gone and talked to the police and so forth. He said, look, you sign this stuff, you don't have to come back. Well, Mr. Walden's not a wealthy man. He had an attorney. He said, look, sign it and we're out of here. There's no fine, no jail, no nothing. They did ask him about whether or not he paid his wife's medical bills. But he had health insurance from his employer anyway that covered his wife, as I recall. So it wasn't like there was anything. That was already paid for anyway. Essentially, he's caught in the system, as was Mr. Corum. Under the state's position, he has no avenue of relief. He's just stuck. Well, Mr. Taylor, that does seem unfair. But let me ask you, how does this court get around the 2013 amendment, specifically where the legislature says, however, the court shall not issue the order if the petitioner is otherwise prohibited from obtaining, possessing, or using a firearm under federal law? You have to follow the statute. Yes, I understand. We believe that, as in Corum, I believe in the Lee opinion in the Corum decision, they found that the state court should have some say as to how the state court's convictions should apply to federal law. In other words, in cases like this, the courts have no authority to determine whether or not any conviction that's loosely related to domestic violence should be applicable to the federal firearms ban. I think that statute I told you about basically goes to exactly that point. That was available in 2013, I believe it was enacted in early 2013. So, it's a catch-22 situation. But the statutes speak for themselves. Your client would have had a better argument prior to the amendments, without any question. But the legislature, in 2013, decided to add that language, which clearly prohibits the court from issuing the permit, or allowing the issuance of the permit, if they're still a federal disability. I guess the only analogy I can use is medical marijuana laws, where the courts in the state are basically allowing stuff to go forward, and it's still clearly a federal crime. It's not an argument I'm prepared to make, but as an analogy, the states seem to take the position that they can decide for themselves on some issues. If you have no further questions... I don't see any. Thank you, counsel. Mr. Sultanzada, any rebuttal? Just one point, very briefly. In response to the argument that at the time of the guilty plea, this provision for automatic revocation, or for revocation based on that conviction, wasn't in place, I would just point the court to Hayashi v. Department of Financial and Professional Regulation, which is cited in our reply brief. And there was a very similar situation where these doctors, I believe they were chiropractors, pled guilty to some misdemeanors. Later, a provision was enacted that allowed revocation of their chiropractic licenses based on prior misdemeanor convictions, and they argued, well, you can't revoke our licenses based on convictions that occurred before this regulation was in place that allowed you to revoke our licenses based on these convictions. And our Illinois Supreme Court has said no, that since the revocation is prospective only, even though the convictions arose before the statute arose, that those revocations can still take place. There's no problem, no retroactivity problem. And if this court has no further questions, I just ask that it reverse the judgment of the circuit court. Thank you very much. Thank you, counsel. We'll take this matter under advisement.